## MARION HURST *vs.* BLACKSTONE VALLEY GAS AND ELECTRIC COMPANY.

NOVEMBER 2, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a petition for workmen's compensation benefits brought by the widow of a deceased employee of the respondent pursuant to the provisions of G. L. 1956, §28-33-13. It was heard by a single commissioner who, on a finding that the petitioner had failed to meet the fair preponderance burden, entered a decree denying and dismissing the petition. The cause is before us on the petitioner's appeal from a final decree of the full commission affirming the decree of the single commissioner.

It appears from the record that petitioner is the widow of Harold Hurst, respondent's employee, who died from a coronary thrombosis on December 13, 1959. She contends that the immediate cause of her husband's death resulted from or was hastened by a compensable injury sustained in the course of his employment.

The travel of the case is not in dispute. On October 1, 1959 Harold Hurst, who had been in the employ of respondent for some thirty years, was struck by one of respondent's automobiles operated by a fellow employee and sustained injuries to his left elbow, left knee and to his head. A preliminary agreement was entered into awarding compensation of $32 weekly on an average wage of $107.05. Thereafter on December 13, 1959 Mr. Hurst died in his sleep. An autopsy was performed and the report thereof states the following: "Arteriosclerotic Coronary Disease with Acute Coronary thrombosis (Anterior descending branch of the left Coronary Artery)."

At the hearing before the single commissioner, Gordon Hurst, son of the deceased, testified that in the absence of his father's regular physician Dr. John H. Mulvany operated on the elbow of the deceased; that before the accident his father was in good health; and that he thereafter suffered great pain in his left arm and chest, could not relax, and was fearful that he would not be able to return to his work.

The petitioner called Dr. Mulvany, a Fellow of the American College of Surgeons and accredited in internal medicine, who testified that he saw the deceased but once as a patient when on October 31, 1959 he opened an abscess on the left elbow and administered medication. He stated that the patient was very nervous and under tension; that there was spreading sepsis or blood poisoning in the elbow region; that the injuries of October 1, 1959 did contribute to the cause of death; and that the condition of the elbow could have affected the deceased's coronary condition in two ways: first, tension could produce spasms and, secondly, absorption of sepsis could be a factor in aggravating a pathological condition in coronary arteries.

On cross-examination, however, he testified that although he had witnessed the autopsy he had not observed any evidence of a previous infarction; that the condition of the elbow was the result of a fall four days previously; that the lancing of the elbow relieved the sepsis; and that he could not say as to tension thereafter.

The respondent called Dr. Joseph Song, the pathologist who performed the autopsy. He testified that the post-mortem did reveal a necrosis of the heart muscles which was quite old and indicated a previous old infarction. On cross-examination, however, he conceded that there was no way of determining when the prior infarction had occurred and further conceded that in his opinion it had been severe enough to require hospitalization.

The work records of the deceased, admitted without objection, revealed that over a period of fourteen years he had been absent from work some seventeen days by reason of illness, and not at all in the last five years of his employment. Doctor Song's testimony that the time of the prior infarction could not be established included the statement that it could have been as remote as twenty years.

Doctor Charles L. Farrell, an associate fellow in the American College of Cardiology, testified that he was a medical

consultant for respondent but had not examined the deceased. In response to a hypothetical question, he gave it as his opinion that the compensable injuries contributed in no way to the death of the deceased. He further testified that coronary thrombosis is more accurately described as "coronary insufficiency" and is of two separate types, namely, insufficiency with occlusion and insufficiency without occlusion. He based his opinion that there was no connection between the injuries and the death on the ground that the autopsy revealed an occlusion which, he alleged, never results from work, strain, or emotional disturbance. He conceded that a coronary insufficiency can result from undue strain or tension, but that when such is the case occlusion is not present. On cross-examination he refused to acknowledge that there was a division of opinion on this among the experts in heart disease.

Doctor Jacob Greenstein, a specialist in internal medicine with a subdivision of cardiology, also testified for respondent in strong corroboration of the opinion given by Dr. Farrell.

In rebuttal petitioner called Dr. Frank D. Fratantuono, whose qualifications were conceded by respondent. He testified as to service on the American College of Cardiology board of governors. Asked if the injury had contributed to the cause of death, Dr. Fratantuono replied: "In and of itself I cannot conceive of the accident causing the myocardial infarction but I belong, of course, to the school that feels that stress and strain may be the triggering mechanism in myocardial infarction which is due to coronary thrombosis or occlusion."

To further questioning if stress and strain resulting from the accident had triggered the heart attack, the doctor replied in the affirmative.

However, when asked in cross-examination whether, if there were arteriosclerosis as in the present case, the death

could be a natural result without stress and strain, Dr. Fratantuono replied, "It could be."

The single commissioner in his decision stated that he was more favorably impressed by the testimony of respondent's experts than by those testifying for petitioner. He found as a fact that petitioner had failed to establish by a fair preponderance of the evidence that the compensable injuries sustained by the deceased caused, hastened, aggravated or contributed to the coronary thrombosis which was the undisputed cause of death.

The petitioner assigns sixteen reasons in support of her claim of appeal. A number of them relate to evidentiary rulings, most of which go to the weight and none of the remaining evidentiary objections has merit.

The remaining reasons of appeal allege that the decree is against the law, against the evidence, ignores the undisputed testimony of the son and Dr. Mulvany, and fails to give the proper weight to such testimony. In addition, petitioner assigns as a reason of appeal that the decision of the commission is illegal in that it violates petitioner's constitutional right to a decision by the full commission.

This latter reason of appeal was not included in petitioner's appeal to the full commission and ordinarily would not therefore be considered by us. *Brown & Sharpe Mfg. Co. v. Lavoie,* 83 R. I. 335. In the instant cause, however, petitioner could not have included such reason since the circumstances on which it is based involve the conduct of the commission in passing upon petitioner's appeal from the decree of the single commissioner. She could, therefore, have no previous knowledge of what she now contends to have constituted illegal procedure by the full commission in reaching its decision. In such circumstances her last reason of appeal constitutes an exception to the general rule.

It is her contention that since only two members of the three-man commission participated in the decision and one

of those participating was the single commissioner from whose decree the appeal was taken, she has been denied due process under the fourteenth article of amendments to the United States constitution.

There is no merit in this contention. In *Cairo* v. *Sayles Finishing Plants, Inc.*, 83 R. I. 297, this court indicated and we now categorically declare that the legislature was under no constitutional compulsion to provide such an appeal. We have repeatedly held that the workmen's compensation commission has all the characteristics of a court save only that it has not been so named. An appeal is provided to this court and the intermediate appeal to the full commission need not have been provided.

The petitioner contends, however, that since the decision in *Cairo* v. *Sayles Finishing Plants, Inc., supra,* the legislature has amended the relevant provision by the enactment of P. L. 1956, chap. 3724. This amendment, she contends, provides that two members of the commission shall constitute a quorum, but that when one of only two members participating is the single commissioner who heard the cause in the first instance, a quorum is lacking as a matter of law. We cannot agree.

By the 1956 amendment the legislature provided that the single commissioner "may" disqualify himself, but does not require him to do so. If the legislature had intended to prohibit the single commissioner who heard the petition from participating in the decision of the full commission, it would have so provided. The legislature may well have recognized that due to illness, absence or other causes, a quorum could not be achieved without the participation of such single commissioner.

The petitioner's remaining reasons of appeal are embraced in a single issue as follows: "Was the death of Harold Hurst, the employee, on December 13, 1959, precipitated, hastened or triggered by the injuries sustained on October 1, 1959 and/or from the complications resulting therefrom."

In support of her claim that the compensable injury sustained by deceased did contribute to or hasten his death, petitioner contends that the single commissioner, and the full commission on review, failed to give any weight to such uncontradicted evidence as the work record of the deceased, prior to the accident, and the testimony of Dr. Mulvany as well as that of Gordon Hurst. She acknowledges that this court will not weigh the evidence, but argues that failure to consider uncontradicted testimony is a question of law and not of fact, relying on *Sullivan* v. *State*, 89 R. I. 119.

We are in full accord with the principle laid down in that case but it is of no assistance to petitioner. The evidence on which she relies is at best opinion evidence, for it can establish no more than that the deceased appeared to be enjoying full health. It is offset by the testimony of Dr. Farrell who stated: "This man on physical examination might not show anything. He was a sick man inside. You may not and I may not know it, but we may be sick inside. I don't know, nobody knows that. You can't prove that, not sick in the ordinary sense of the word."

Mankind's personal experience with the sudden death of those who appeared to be in excellent health is somber but eloquent substantiation of Dr. Farrell's testimony.

The petitioner further contends that although the single commissioner stated that the testimony of respondent's witnesses appealed to him as being more logical, the decision of the full commission observed that this was a case where the single commissioner might have found either way since there was evidence in support of both positions. Such conclusion, she argues, entitled her to a decision on the principle of liberal interpretation. This argument, however, completely ignores the fundamental rule that petitioner is required to establish her case by a fair preponderance of the evidence.

The petitioner's remaining contention is, so far as we are aware, one of first impression in this jurisdiction. She argues in effect that where an acknowledged difference of opinion exists between medical experts as to whether stress and strain, or tension, resulting from a compensable injury can trigger, accelerate or contribute to death, the immediate cause of which is coronary thrombosis, the question is one of law and not of fact and should be determined by the court of last resort. In support thereof she cites *Dwyer* v. *Ford Motor Co.*, 36 N. J. 487. We are not unimpressed with the cogent reasoning of both the majority and concurring opinions in that case.

Assuming, however, that this court in a proper case would adopt the view therein suggested, it would prove of no assistance to petitioner in the instant cause. The petitioner's expert witness, Dr. Fratantuono, identified himself as belonging to that school of thought which believes that stress and strain may be the triggering mechanism in myocardial infarction which is due to coronary thrombosis or occlusion. On cross-examination, however, when asked whether, assuming that arteriosclerosis were present, death could have resulted without stress and strain, he replied, "It could be."

It is undisputed, and the post-mortem report discloses, that arteriosclerosis was present. In the light of Dr. Fratantuono's reply it cannot be said that there was no evidence upon which the commission could base its decision affirming the finding of the single commissioner to the effect that petitioner had failed to establish her claim by a fair preponderance of the evidence. In so holding we do not ourselves weigh the evidence as that is the exclusive province of the commission.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded

to the workmen's compensation commission for further proceedings.

*Zietz, Sonkin & Radin, Leo Sonkin,* for petitioner.

*Morrissey and Conley, Joseph L. Breen,* for respondent.